UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OLGA GORBACHEVA,

           Plaintiff,

     v.

ABBOTT LABORATORIES EXTENDED
DISABILITY PLAN, et al.,

           Defendants.

Case No.  5:14-cv-02524-EJD

**ORDER GRANTING IN PART
MOTIONS FOR SUMMARY
JUDGMENT AND REMANDING FOR
FURTHER PROCEEDINGS**

Re: Dkt. Nos. 46, 49

In this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. § 1132, Plaintiff Olga Gorbacheva ("Plaintiff") seeks long-term disability ("LTD")
payments from Defendant Abbott Laboratories Extended Disability Plan ("the Plan") after her
request for benefits was denied.  Plaintiff also seeks retirement benefits under ERISA from
Defendants Abbott Laboratories Annuity Retirement Plan and the Abbott Laboratories Retiree
Health Plan ("the Retirement Plans").  Finally, Plaintiff seeks statutory penalties against
Defendants James Sipes ("Sipes") and Abbott Laboratories, Inc. ("ALI") for failing to comply
with Plaintiff's requests for information.

Presently before the court are motions by Plaintiff and Defendants the Plan, the Retirement
Plans, Sipes, and ALI (collectively, "Defendants") for summary judgment.  See Dkt Nos. 46, 49.
Having carefully considered the parties' arguments and evidence, the Court finds that Plaintiff has
satisfied her burden on her first cause of action.  Defendants, meanwhile, have done the same for
Plaintiff's second, third, and fourth claims.  Both motions are GRANTED IN PART, as set forth
below.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and Defendants have each filed a statement of undisputed facts.  See Dkt Nos. 47, 50.  As befits this contentious case, each side has raised a number of objections to its opponent's statement.  See Dkt. Nos. 54, 56.  The Court summarizes the genuinely undisputed facts from these statements here, as well as any disputed facts that are material to the Court's analysis.

### A.   The Plan

Plaintiff was a participant in the Plan, which entitled her to benefit payments if she was "Disabled" within the meaning of the Plan.  The Plan would pay benefits for 24 months so long as Plaintiff was "completely prevented from performing all the duties required to be performed in [her] own occupation or employment."  AR 0006; AR 0039.  Afterwards, the Plan would pay benefits if she was "completely prevented from performing any occupation or employment for which [Plaintiff was] qualified or [could] reasonably become qualified, based on . . . her training, education, or experience."  Id.  The Plan provided for LTD benefits if and when Plaintiff's disability continued for at least 26 weeks and she received short-term disability benefits during that time.  AR 0011-12; AR 0044-45.

The Plan Administrator, identified in the Plan as the Divisional President, Compensation and Benefits, at Abbott Laboratories ("Abbott"), delegated the duties of making initial claims determinations and deciding initial appeals to a third party, Matrix Absence Management, Inc. ("Matrix").  The Plan also provided for second-level appeals, which were heard by Sipes, an Abbott employee.[1]  No part of Sipes' performance evaluation or compensation was affected by the number of claims he granted or denied, and in deciding second-level appeals he did not consider the amount of benefits that would be paid or the financial impact to Abbott.

### B.   Plaintiff's Application for Benefits

Plaintiff was employed by Abbott as a Clinical Research Associate II.  Her job involved

---

[1] Plaintiff disputes whether Sipes was properly delegated authority to hear these appeals.  The Court addresses this argument below.  Plaintiff does not dispute that Sipes did in fact decide second-level appeals at all times relevant here.

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

1    monitoring clinical trials for new products, product improvements, and product process changes.

2    It required her to do a variety of tasks on the computer and on the telephone, including writing in

3    connection with clinical trials and sites.  The job also required her to travel to some extent, though

4    the record is ambiguous as to how much.  A job analysis worksheet indicates that Plaintiff was

5    traveling 15% of the time by automobile or plane, though she did not have to drive a company car.

6    Dkt. No. 48 ("AR") at 0266.  However, in a later functional capacity test Plaintiff told the

7    examiner that she traveled to conferences twice a year and rarely visited clinical trial sites.  AR

8    0597.

9         Plaintiff suffers from a number of issues with her lumbar spine, including degenerative

10   disc disease, spondylosis, and scoliosis.  She also has a history of knee problems, such as

11   osteoarthritis and tears of her meniscus and posterior cruciate ligament.  In 2011, Plaintiff applied

12   for short-term disability benefits, citing continuous pain in her lower back and right leg resulting

13   from these issues.

14        On September 7, 2011, Matrix informed Plaintiff that it had approved her application for

15   short-term disability benefits from August 22, 2011 through October 18, 2011, with an expected

16   return-to-work date of October 19, 2011.  Plaintiff was unable to return to work on the expected

17   date.  On January 2, 2012, Plaintiff applied for LTD benefits under the Plan.  As part of its review,

18   Matrix sought and reviewed updated medical records from Plaintiff's treating physicians and

19   found that Plaintiff was restricted to a less than sedentary work status at the time and that she

20   would participate in a comprehensive treatment plan to relieve her symptoms.  Matrix approved

21   Plaintiff for LTD benefits from February 20, 2012, the first day Plaintiff was eligible for LTD

22   benefits, through May 20, 2012, but Matrix advised Plaintiff that further benefits would be

23   contingent on the receipt of updated medical records.  On May 24, 2012, after Plaintiff had

24   submitted records from her doctor, the claims administrator extended the benefits through June 10,

25   2012.  However, because Plaintiff's nurse case manager ("NCM") was "concerned" about

26   Plaintiff's "sporatic [sic] treatment" for her symptoms, AR 1157, the NCM commissioned an

27

28   Case No.: 5:14-cv-02524-EJD
     ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
     REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

1   independent medical examination ("IME") of Plaintiff.

2       L. Neena Madireddi, M.D. ("Dr. Madireddi") conducted the IME on July 11, 2012.  Dr.

3   Madireddi reviewed Plaintiff's medical records and job description and performed a physical

4   examination.  Dr. Madireddi concluded that Plaintiff did have medical conditions that resulted in

5   certain limitations, but that Plaintiff was able to perform her job because her job description was

6   sedentary.  On the basis of the IME, and having received and reviewed Plaintiff's medical records,

7   Matrix denied Plaintiff LTD benefits beyond July 31, 2012.

8       On January 31, 2013, Plaintiff, through her counsel, timely appealed the denial of LTD

9   benefits.  Plaintiff argued that medical records she submitted supported her claim of disability and

10  that the IME was unreliable.  On March 25, 2013, Plaintiff also informed Matrix that Plaintiff had

11  been approved for Social Security benefits, although Plaintiff did not submit a copy of the

12  favorable Social Security Disability Insurance ("SSDI") opinion.  Matrix commissioned a peer

13  review of Plaintiff's file by an orthopedic surgeon, who concluded that Plaintiff was limited to

14  sedentary work.  Because the surgeon also found that Plaintiff's job was a sedentary capacity job,

15  the surgeon concluded that Plaintiff was capable of performing her job.  A vocational

16  rehabilitation consultant agreed that Plaintiff was able to perform her own occupation.  Therefore,

17  Matrix denied the appeal on May 15, 2013.

18      On November 8, 2013, Plaintiff requested a second-level appeal by letter.  In the letter,

19  Plaintiff stated that she had recently undergone a functional capacity evaluation ("FCE") and

20  requested that the deadline for review of the appeal be tolled until the results of the FCE were

21  available.  Matrix responded on November 11, 2013, and agreed to toll the deadline.  Over the

22  following months, Plaintiff sought and obtained several further extensions of the review deadline

23  in order for Plaintiff to submit further medical records and a release allowing the file reviewer to

24  speak to Plaintiff's medical providers.  On January 16, 2014, Matrix informed Plaintiff's counsel

25  that it would proceed with the second-level review based on the information received to date.

26      As part of the second-level review, the Plan had Plaintiff's records peer reviewed by a

27

28  Case No.: 5:14-cv-02524-EJD
    ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
    REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

second set of doctors, including another orthopedic surgeon.  The surgeon did not dispute that Plaintiff suffered from some functional impairments, but the surgeon concluded that Plaintiff was capable of performing sedentary work full-time.  Sipes denied Plaintiff's second-level appeal on February 27, 2014.

On March 4, 2014, Plaintiff's counsel responded by letter and disputed the denial of Plaintiff's second-level appeal.  Plaintiff's counsel argued that the Plan had failed to consider various documents, including Plaintiff's favorable SSDI opinion and a report from a new doctor, both of which Plaintiff's counsel attached to the letter.  Plaintiff had not submitted these documents before, but Plaintiff's counsel claimed that the previous appeal submission had not been final and that the March 4 letter and its enclosures were Plaintiff's final submission.  Plaintiff's counsel contended that the second-level appeal should be reviewed again in light of this additional information.  However, deciding that the appeal process had been completed and that the Plan did not provide for a reconsideration of a second-level appeal, Sipes took no further action regarding Plaintiff's claim.

On April 17, 2014, Plaintiff, through her counsel, wrote to Sipes to request certain documents related to her claim for benefits.  Among other things, the letter sought all documents governing the Plan.  Ted V. Parker ("Parker") responded on April 18, 2014 and provided a copy of the relevant Plan documents.  Parker did not provide the contract between Matrix and Abbott or a copy of the document delegating authority to Sipes to hear second-level appeals.

The Retirement Plans are separate benefit plans from the Plan.  Plaintiff did not file any separate claim for benefits from the Retirement Plans.  However, Plaintiff contends that she did not need to file a separate claim because benefits due under the Retirement Plans are automatically provided to any participant eligible for disability benefits under the Plan.

**C.    Plaintiff's Medical History**

Plaintiff's medical history is the subject of some dispute between the parties, and it bears further elaboration here.  Prior to March 2012, the parties agree that Plaintiff was disabled.  On

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

March 22, 2012, Matrix's nurse case manager reviewed Plaintiff's medical records to that point and found that they "contain objective medical evidence that support [her] restrictions/limitations of a less than sedentary work status at this time." AR 0331. A doctor seeing Plaintiff to help her manage her pain had suggested a course of treatment including medication changes, epidural steroid injections, physical therapy, and an evaluation by a pain psychologist. AR 0368. The nurse case manager recommended extending Plaintiff's benefits for several weeks while she pursued this course of treatment. Id. Accordingly, Plaintiff was eventually awarded LTD benefits from February 20, 2012 through July 31, 2012. AR 0372-74; AR 0432-37.

In a subsequent review, however, the nurse case manager noted that Plaintiff did not appear to be participating in the treatment plan and suggested that her "sporadic" treatment might mean that her symptoms were not as significant. AR 1148-49. On May 11, Matrix received updated records from Plaintiff's treating physician, Duc M. Nguyen, M.D. ("Dr. Nguyen"), that indicated that Plaintiff did not follow the course because she was not sure it was helpful; Dr. Nguyen recommended conservative treatment instead. AR 0381-83. Dr. Nguyen also estimated that Plaintiff could return to work on August 10. AR 0378. Around the same time, Plaintiff submitted a report from a different doctor, Dean F. Weinberg, D.C. ("Dr. Weinberg"), in which Dr. Weinberg estimated that she could return to work on July 2 and could still improve given further treatment. AR 0400.

There is no record that any of Plaintiff's treating physicians, including Dr. Nguyen, evaluated her after May 2012. See AR 0928-30 (last visit with Dr. Nguyen on May 10, 2012, indicating that she could return to work after three months); AR 0991-92 (last visit with Gerald P. Keane, M.D., on November 11, 2011, recommending that she be off work for two months); AR 0921 (last visit with Dr. Weinberg on May 18, 2012, indicating a "guarded" prognosis and recommending follow up in one month); AR 0965-66 (last recorded visit with Arthur J. Ting, M.D., on February 23, 2012, indicating that Plaintiff was unable to return to work until April 20). Only Dr. Nguyen's evaluation supported work restrictions continuing after July 2, 2012, and he

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

1   estimated that Plaintiff could return to work in early August.  AR 0930.  Also, on June 29, Dr.

2   Nguyen issued another report finding that Plaintiff could not work at all, although it does not

3   appear that he had examined her in person within the previous month.  AR 0411-14.

4         Meanwhile, on June 28, 2012, Matrix informed Plaintiff that it had scheduled an IME with

5   Dr. Madireddi for July 11.  AR 0410.  After conducting the IME, Dr. Madireddi concluded that

6   Plaintiff could perform a sedentary job.  AR 0882-95.  Plaintiff attests that the examination was

7   "cursory" and lasted only ten minutes.  AR 0482-82.  However, Dr. Madireddi's report describes a

8   more thorough examination.  AR 0890-92.  After the IME, Matrix issued a determination that

9   Plaintiff's benefits would end effective July 31, 2012.  AR 0865.  In addition to the IME, Matrix

10  stated that it had "received and reviewed [Plaintiff's] medical records" and observed that her

11  treatment had been "sporadic."  AR 0865-66.

12        During her first-level appeal, as indicated above, Matrix asked an orthopedic surgeon,

13  William Andrews, M.D., C.I.M.E. ("Dr. Andrews"), to review Plaintiff's file.  Dr. Andrews

14  reviewed Plaintiff's medical records, including the IME by Dr. Madireddi.  AR 0524-25.  Dr.

15  Andrews found that Plaintiff's "complaints of pain from her degenerative disc disease are

16  consistent with the objective clinical findings" and that her "pain [was] impacting her ability to

17  function."  AR 0527.  However, Dr. Andrews also said that he "d[id] not see any findings of a

18  significant motor defect or other objective findings, which would preclude sedentary work" and

19  that he did not believe Plaintiff was "completely incapacitated."  AR 0529.

20        Later on, while Plaintiff was preparing a second-level appeal, she underwent an FCE by

21  Alan Nelson and Dr. Diana Bubanja.  AR 0579-0601.  During the FCE, Plaintiff complained of

22  continuous pain and fatigue and reported that she could sit for no more than 15 minutes at a time.

23  AR 0582-84.  The FCE also involved a keyboard tolerance test, during which Plaintiff was able to

24  type for 14 minutes before asking to stop and lie down on the floor for 20 minutes.  AR 0591.

25  Plaintiff later said that the most difficult activity she had to do during the FCE was the typing test.

26  AR 0594.  The evaluation found that Plaintiff could not "perform any functional level of work,

27

28

including sedentary employment," in part because she could not sit for continuous periods or use her upper extremities repetitively. AR 0595. Specifically, the FCE found that Plaintiff could not perform her previous job at Abbott or any similar job due to her restrictions. AR 0600. On November 27, 2013, Plaintiff submitted the results of her FCE to Matrix to support her second-level appeal. AR 0577-78.

For the second-level appeal, the Plan asked another orthopedic surgeon, Joanne R. Werntz, M.D. ("Dr. Werntz"), to conduct a peer review of Plaintiff's medical history. AR 0670-81. In her report, Dr. Werntz summarized Plaintiff's medical records, including the reports from her treating physicians, the IME, and the FCE. AR 0675-79. Dr. Werntz found that Plaintiff had "functional impairment" from her knee and back issues, but that she still could "work full time with restrictions and limitations." AR 0679-80. Dr. Werntz found "no objective documentation . . . that would limit the claimant from performing" all of the activities associated with her job. AR 0680. Other than summarizing the findings of the FCE, Dr. Werntz did not address them in any detail. AR 0679. In his letter denying the second-level appeal, Sipes said that he had received and reviewed the FCE, but he adopted Dr. Werntz's conclusions. AR 1111-15.

### D.   Procedural History

On June 2, 2014, Plaintiff filed this suit. See Dkt. No. 1 ("Compl."). Her complaint raises four causes of action: (1) a claim for disability benefits against the Plan pursuant to ERISA § 502(a)(1)(B); (2) and (3) claims for benefits against the Retirement Plans pursuant to the same section of ERISA; and (4) a claim for statutory penalties against Sipes and ALI for failing to hand over the Plan's annual report and certain other documents under ERISA § 502(c)(1). Id., ¶¶s 45-64. Plaintiff asks the Court to order the Plan to pay Plaintiff benefits starting from July 31, 2012, in addition to several other forms of relief. Id. at 11-12.

In May 2015, both sides moved for summary judgment on all claims. See Dkt. Nos. 46, 49. Each side filed written opposition to its opponent's motion. See Dkt Nos. 53, 55. This matter was found suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). See

1   Dkt. No. 60.

2   **II.   LEGAL STANDARD**

3      **A.   Standard of Review in ERISA Cases**

4      ERISA allows a beneficiary or plan participant to sue in federal court "to recover benefits

5   due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

6   clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); see

7   also CIGNA Corp. v. Amara, 563 U.S. 421, 425 (2011); Aetna Health Inc. v. Davila, 542 U.S.

8   200, 210 (2004).  A claim of denial of benefits in an ERISA case "is to be reviewed under a de

9   novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

10  determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber

11  Co. v. Bruch, 489 U.S. 101, 115 (1989); Montour v. Hartford Life & Accident Ins. Co., 588 F.3d

12  623, 629 (9th Cir. 2009).

13     If the plan confers such discretion, then the denial is reviewed for an abuse of discretion.

14  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 110-11 (2008).  This grant of discretion must be

15  unambiguous.  Pac. Shores Hosp. v. United Behavioral Health, 764 F.3d 1030, 1039 (9th Cir.

16  2014) (quoting Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en

17  banc)).  The plan administrator bears the burden of proving that it is entitled to abuse of discretion

18  review.  Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc).  In deciding

19  whether the plan administrator has delegated its authority, the district court should focus on

20  whether the plan at issue contemplated the possibility of a transfer of discretionary authority and

21  whether there is evidence establishing such a delegation.  See Shane v. Albertson's Inc., 504 F.3d

22  1166, 1171 (9th Cir. 2007) (citing Hensley v. Nw. Permanente P.C. Ret. Plan, 258 F.3d 986, 998

23  (9th Cir. 2001), overruled on other grounds by Abatie, 458 F.3d at 966).

24     "Under this deferential standard, a plan administrator's decision 'will not be disturbed if

25  reasonable.'"  Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929 (9th Cir. 2012) (quoting

26  Conkright v. Frommert, 559 U.S. 506, 512 (2010)).  The Court "may review only the

27

28  Case No.: 5:14-cv-02524-EJD
    ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
    REMANDING FOR FURTHER PROCEEDINGS

*United States District Court*
*Northern District of California*

1   administrative record when considering whether the plan administrator abused its discretion."

2   Abatie, 458 F.3d at 970.  However, unless explicitly required by the terms of the plan at issue, a

3   claimant need not have presented every legal theory or issue to the plan administrator before

4   raising it in this Court.  See Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620,

5   629-33 (9th Cir. 2008).

6          A plan administrator's decision was unreasonable if it was "(1) illogical, (2) implausible,

7   or (3) without support in inferences that may be drawn from the facts of the record."  Salomaa v.

8   Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (quoting United States v.

9   Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).  The Court should consider factors such

10  as the quality and quantity of the medical evidence, whether the plan administrator commissioned

11  an in-person medical review or simply relied on the claimant's existing medical records, whether

12  the administrator provided its independent experts with all relevant evidence, and whether the

13  administrator considered a contrary disability determination by the Social Security Administration.

14  Montour, 588 F.3d at 630 (citing Glenn, 554 U.S. at 118).

15         A plan administrator's conflict of interest, such as where the claim fiduciary is also the

16  funding source for the plan, is another factor that the Court should weigh when reviewing the

17  administrator's decisions for abuse of discretion.  Glenn, 554 U.S. at 111-12.  However, such a

18  conflict does not lead to a less deferential standard of review; rather, like most procedural

19  violations, the conflict is merely one additional factor to be considered in determining whether a

20  fiduciary abused its discretion.  Id.  The Court may find an abuse of discretion only if, after

21  weighing all of these factors, it is "left with a definite and firm conviction that a mistake has been

22  committed."  Salomaa, 642 F.3d at 676 (quoting Hinkson, 585 F.3d at 1262).

23         **B.     Summary Judgment Standard**

24         Ordinarily, a motion for summary judgment should be granted if "there is no genuine

25  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

26  Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party

27

28  Case No.: 5:14-cv-02524-EJD
    ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
    REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

10

bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If the abuse of discretion standard governs an ERISA case, however, "'a motion for summary judgment is,' in most respects, 'merely the conduit to bring the legal question before the court.'"  Stephan, 697 F.3d at 930 (quoting Nolan v. Heald Coll., 551 F.3d 1148, 1154 (9th Cir. 2009)).  As a result, "the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Id. (quoting Nolan, 551 F.3d at 1154).[2]  However, when the Court considers evidence outside the administrative record to evaluate a potential conflict of interest, the Court must view the evidence in the light most favorable to the non-moving party and assess whether there is a genuine issue of material fact.  Id. (quoting Nolan, 551 F.3d at 1154).

## III.    DISCUSSION

### A.    Claim for Disability Benefits

#### i.    Standard of Review

Plaintiff contends that the applicable standard of review is de novo because Sipes was never properly delegated discretion to decide claims and appeals under the Plan.  The Plan documents vest the "Plan Administrator" with "sole discretion . . . to decide all questions concerning the Plan and the eligibility of any person to participate in the Plan," as well as a number of other issues.  AR 0019.  The Plan Administrator could also "delegate his or her

---

[2] Defendant contends that the Ninth Circuit would hold differently today.  See Dkt. No. 53 at 4-5. Unless and until it does so, however, this Court is bound by Nolan and Stephan.

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

fiduciary responsibilities" "by written instrument."  AR 0020.

On April 17, 2006, the Plan Administrator executed such a written instrument delegating to "the Divisional Vice President, Benefits" all of the Administrator's discretionary authority.  AR 0707.  Plaintiff observes that Sipes' job title was, in fact, "Divisional Vice President, Benefits and Wellness."  AR 1115; see Dkt. No. 46-4, Ex. 39 at 5:25-6:3.  Meanwhile, a different employee held the title "Divisional Vice President, Compensation and Benefits."  AR 0037.

In response, Defendants have submitted a declaration from Parker, an Abbott employee familiar with the Plan.  Dkt. No. 55-2.  Parker attests that the title of "Divisional Vice President, Benefits" was changed to "Divisional Vice President, Benefits and Wellness" sometime after the 2006 delegation.  Id., ¶ 6.  In other words, the plan administrator delegated authority to the employee in the role that Sipes later filled.  Plaintiff contends that the Court may not consider the declaration at this stage, but the cases that Plaintiff cites discuss the separate question of whether a plan unambiguously confers discretion, which is not at issue here.  In fact, the Ninth Circuit has relied on such extrinsic evidence to establish that a delegation has occurred.  See Hensley, 258 F.3d at 998.  The delegation was explicitly permitted by the Plan documents, and the declaration clarifies that the authority was delegated to Sipes.[3]  Therefore, the Court will review the decision for an abuse of discretion.

### ii.   Denial of Benefits

Plaintiff contends that Defendants committed several abuses of discretion in denying Plaintiff's claim for LTD benefits: (1) Sipes failed to review the entire record; (2) the Plan Administrator had no justification for finding that her long-term disability ended on July 31, 2012 or for finding that her occupation was sedentary and not light duty; and (3) the Plan Administrator ignored the decision awarding Plaintiff SSDI benefits.  Plaintiff also asks the Court to weigh the

---

[3] Plaintiff also contends that the delegation was unenforceable because a later amendment to the Plan documents changed the allocation of authorities and responsibilities under the Plan.  Plaintiff does not explain why a reallocation of duties would nullify a previous delegation, and she cites no authority in support of her contention.  The Court finds that the delegation remained valid even after the amendment.

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

1     conflict of interest inherent in having Sipes, an Abbott employee, decide the outcomes of second-

2     level appeals.  The Court considers each argument in turn.

3         As an initial matter, Defendants contend that Plaintiff may not rely on arguments that she

4     did not raise during her appeals.  Defendants point out that Plaintiff submitted only a one-page

5     letter requesting a second-level appeal.  However, ERISA claimants are not required to exhaust

6     issues or theories in their appeals.  See Vaught, 546 F.3d at 633.  In this circuit, plaintiffs in

7     ERISA cases "may introduce new theories in court that were not presented to the plan

8     administrator."  Caldwell v. Facet Retiree Med. Plan, No. 13-cv-0385-WHA, 2014 WL 1340631,

9     at *3 (N.D. Cal. Apr. 3, 2014) (citing Vaught, 546 F.3d at 633).  Plaintiff is entitled to do so here.

10        Plaintiff contends that Sipes did not review the entirety of what is now the administrative

11    record.  The only relevant documents that Plaintiff cites are two initial determinations by the

12    claims administrator that Plaintiff's job was a light duty occupation, which run contrary to Sipes'

13    conclusion that hers was a sedentary position.  AR 0504-05.  However, the same claims

14    administrator later double-checked her job requirements and said that it was sedentary.  AR 0536;

15    see also AR 0426; AR 0523; AR 0529; AR 1157 (describing her occupation as sedentary).

16    Plaintiff has not shown that considering these documents would have changed the outcome of the

17    second-level appeal, and Plaintiff thus has not established an abuse of discretion.

18        Plaintiff also claims that Sipes did not in fact review the documents he claimed to have

19    reviewed.  However, the fact that he could not remember a specific document at his deposition

20    does not mean that he did not review the document at all in the first instance.  Plaintiff again has

21    failed to show an abuse of discretion.

22        Plaintiff next contends that the Plan Administrator's decision overestimated Plaintiff's

23    physical condition.  On March 22, 2012, a Matrix nurse found that Plaintiff's medical records

24    "contain objective medical evidence that support [her] restrictions/limitations of a less than

25    sedentary work status at this time."  AR 0331.  Accordingly, Plaintiff was awarded LTD benefits

26    from February 20, 2012 through July 31, 2012.  AR 0372-74; AR 0432-37.  In denying the

27

28    Case No.: 5:14-cv-02524-EJD
      ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
      REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   second-level appeal, however, Sipes claimed that the medical records failed to support any

2   interference with her job performance "beyond July 31, 2012." AR 1114.  In essence, Plaintiff

3   argues that the Plan Administrator did not establish that anything in Plaintiff's medical condition

4   changed on July 31, 2012, so choosing that end date for her LTD benefits was arbitrary.  More

5   broadly, Plaintiff argues that the Plan Administrator acted arbitrarily in "refus[ing] to credit

6   [Plaintiff's] reliable evidence, including the opinions of a treating physician," without full

7   explanation.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2005).

8          However, the record contains a great deal of evidence that supports the decision.  As

9   summarized above, none of Plaintiff's treating physicians appear to have evaluated her in person

10  after May 2012.  Meanwhile, Dr. Madireddi did conduct an in-person IME in July 2012.  Plaintiff

11  assails Dr. Madireddi's report as conclusory, but she ignores the detail that Dr. Madireddi

12  provided about the results of her tests.  AR 0890-92.

13         Thus, the evidence before the Plan Administrator was ambiguous.  On one hand, Plaintiff's

14  treating physicians indicated that she was disabled, but the most recent medical records were by

15  then months old.  On the other hand, Dr. Madireddi had conducted the IME more recently and

16  found that Plaintiff could do sedentary work.  Moreover, the record indicates that Plaintiff's

17  treatment was sporadic.  Considering all of the evidence before it, the Plan Administrator initially

18  concluded that Plaintiff was not disabled beyond July 31, 2012.  In his peer review for the first-

19  level appeal, Dr. Andrews considered all of the available medical evidence and agreed that

20  Plaintiff was not disabled.  Matrix relied on his assessment, as well as its own review of the

21  medical records, in denying the first-level appeal as well.  Given the conflicting medical evidence,

22  these conclusions were reasonable and did not constitute an abuse of discretion.

23         Plaintiff's objections about Dr. Werntz's review, which she undertook as part of the

24  second-level appeal, are better founded.  In particular, Plaintiff observes that Dr. Werntz

25  concluded that Plaintiff was capable of full-time sedentary work, but Dr. Werntz did not explain

26  why she reached a different conclusion from the FCE.  Defendants respond that Dr. Werntz

27

28

1    weighed competing evidence in making her assessment.  For example, the IME found that

2    Plaintiff could sit for eight hours cumulatively in a work day, AR 0678, but Dr. Werntz found that

3    Plaintiff could only sit for six hours.  AR 0680.  However, this only highlights the fact that Dr.

4    Werntz offered no explanation for her conclusions, and in particular her decision to discredit the

5    FCE almost entirely.  Sipes' decision suffers from the same defect.

6           Defendants contend that Dr. Werntz was entitled to use her expertise to evaluate the

7    conflicting evidence.  That may be true, but she was not entitled to "arbitrarily refuse to credit

8    [Plaintiff's] reliable evidence," such as the FCE.  Nord, 538 U.S. at 834.  In other words, although

9    the existence of a conflicting FCE does not establish an abuse of discretion in itself, the Plan

10   Administrator should have offered some explanation for why it believed that the FCE results were

11   implausible.  Instead, neither Dr. Werntz nor Sipes made "any serious effort to discredit" the

12   results of Plaintiff's FCE.  Stout v. Hartford Life & Accident Ins. Co., 58 F. Supp. 3d 1020, 1030

13   (N.D. Cal. 2013); see also Caplan v. CNA Fin. Corp., 544 F. Supp. 2d 984, 989, 992 (N.D. Cal.

14   2008) (criticizing a defendant for "discount[ing] . . . the results of [an] FCE" while adopting a

15   reviewing physician's opinion).  Defendants are correct that, unlike the defendants in Stout and

16   Caplan, the Plan Administrator did commission an in-person IME by Dr. Madireddi.  But Dr.

17   Werntz only conducted a paper review of Plaintiff's medical records, and neither she nor the Plan

18   Administrator clarified why they placed greater weight on the relatively brief IME in July 2012

19   than on the much more involved FCE from October and November of 2013.  Cf. Burke v. Pitney

20   Bowes Inc. Long Term Disability Plan, 640 F. Supp. 2d 1160, 1173-74 (N.D. Cal. 2009) (finding

21   that a plan administrator acted reasonably in ordering a second IME because the previous IME

22   was ten months old and contradicted by a later FCE).  The Plan Administrator's failure to respond

23   to the FCE's findings suggests an abuse of discretion.

24           Plaintiff also objects to the Plan Administrator's characterization of the requirements of

25   Plaintiff's job.  All of the people who reviewed Plaintiff's application for LTD benefits reviewed a

26   document called a Job Analysis Worksheet, which said that Plaintiff's job required her to travel

27

28   Case No.: 5:14-cv-02524-EJD
     ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
     REMANDING FOR FURTHER PROCEEDINGS

15

United States District Court
Northern District of California

United States District Court
Northern District of California

1    15% of the time by automobile or plane.  AR 0266.  Plaintiff contends that travel to this extent

2    was inconsistent with a sedentary work load.  Plaintiff also points out that at some point during the

3    review process, a Matrix employee wrote that Plaintiff's occupation was a light duty occupation.

4    AR 0504-05.

5            However, the evidence supports the Plan Administrator's finding that her position was

6    sedentary.  The Department of Labor defines "sedentary employment" as work that involves

7    "exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to

8    . . . move objects."  AR 0535.  This type of work "involves sitting most of the time, but may

9    involve walking or standing for brief periods of time."  Id.  "Jobs are sedentary if walking and

10   standing are required only occasionally and all other sedentary criteria are met."  Id.  Almost all of

11   Plaintiff's essential job functions involved using a computer or a telephone at her desk, and her job

12   did not require her to stand, squat, or drive.  AR 0266-69.  Contrary to the Job Analysis

13   Worksheet, Plaintiff stated during her FCE that she traveled to conferences no more than twice a

14   year.  AR 0597.  Moreover, even if Plaintiff in fact did travel 15% of the year, there is no

15   indication that she was required to drive herself, meaning that her job was still sedentary.  AR

16   0266.  Plaintiff cites Polnicky v. Liberty Life Assurance Co. of Boston, No. 13-cv-1478-SI, 2014

17   WL 6680725, at *9 (N.D. Cal. Nov. 25, 2014), for the proposition that a job requiring travel could

18   not be a sedentary position, but the position in that case involved "substantial out-of-office travel,"

19   "thirty minutes to three hours per day" of walking, and "the ability to drive motor vehicles."  Id. at

20   *8.  By contrast, Plaintiff's position did not require any of these.  The Plan Administrator's

21   decision to consider her position sedentary was not an abuse of discretion.

22           Finally, Plaintiff argues that the Plan Administrator erred by failing to consider the

23   decision awarding Plaintiff SSDI benefits.  "Evidence of a Social Security award of disability

24   benefits is of sufficient significance that failure to address it offers support that the plan

25   administrator's denial was arbitrary, an abuse of discretion."  Salomaa, 642 F.3d at 679 (citing

26   Montour, 588 F.3d at 635).  "Weighty evidence may ultimately be unpersuasive, but it cannot be

27

28

ignored."  Id.  Defendants blame Plaintiff for failing to submit the award letter despite receiving several extensions for filing documents in connection with the second-level appeal.  AR 0564; AR 0603; AR 0620.  Moreover, Plaintiff had agreed to provide Matrix "with copies of all communications with Social Security . . . within 15 days of receipt."  AR 1066.  Nevertheless, because Plaintiff did not submit the SSDI determination until after Sipes decided on her second-level appeal, that determination is not in the administrative record.  Defendants contend that the Court may not consider it now.

However, the administrative record reflects that Plaintiff notified the claims administrator of the SSDI decision well before Sipes undertook his review.  AR 0511; AR 0854.  Neither Sipes nor anyone else requested the decision letter or told Plaintiff that it "would facilitate [their] review."  Montour, 588 F.3d at 637; see also Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 871 (9th Cir. 2008) (holding that a claims administrator must request additional information while the claimant still "ha[s] a fair chance to present evidence").  Nor did Defendants make any attempt to obtain the SSDI determination on their own.  Cf. Robertson v. Standard Ins. Co., 139 F. Supp. 3d 1190, 1206-07 (D. Or. 2015) (citing Sterio v. HM Life, 369 F. App'x 801, 804 (9th Cir. 2010)) ("Defendant's failure to procure the SSA file or ask Plaintiff to do so weighs in favor of a finding that Defendant abused its discretion in denying Plaintiff benefits.").  Instead, it appears that Defendants ignored the SSDI determination completely; Sipes did not mention it at all in his decision on the second-level appeal.  These failures weigh in favor of an abuse of discretion.

The Court must view the potential abuses of discretion above - namely, the failures to account for the FCE or the SSDI determination - in light of the "structural conflict of interest" inherent in having "the same entity that funds an ERISA benefits plan also evaluate[] claims."  Montour, 588 F.3d at 630.  This conflict of interest may prove important "where circumstances suggest a higher likelihood that it affected the benefits decision."  Glenn, 554 U.S. at 117.  It looms larger when an "administrator has a history of biased claims administration," but less so if

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

1    "the administrator has taken active steps to reduce potential bias and to promote accuracy." Id. In

2    assessing a conflict of interest, the Court may rely on evidence outside the administrative record.

3    See Stephan, 697 F.3d at 930.

4         Here, Plaintiff observes that the Plan closed 120 claims and over $2 million in benefit

5    liabilities in 2013 alone, when Sipes was the Divisional Vice President, Benefits and Wellness.

6    Dkt. No. 49-2, Ex. A; Dkt. No. 46-4, Ex. 39 at 6:2-5.  Defendants respond that, in fact, much of

7    this decrease occurred because of a corporate reorganization in which thousands of employees,

8    and their associated benefits claims, were transferred to a new company called AbbVie.  See Dkt.

9    No. 58-1, ¶ 3.  Meanwhile, Sipes received no personal benefit, in terms of his performance

10   evaluation or compensation, for denying claims, and he attests that he did not consider the amount

11   of benefits to be paid or the resulting financial impact to Abbott.  Dkt. No. 49-9, ¶¶s 10-12.  Still,

12   when Sipes was designated to consider second-level appeals, he reviewed six appeals and granted

13   only one.  Dkt. No. 49-2, ¶ 5.

14        Plaintiff has failed to identify any evidence of "malice" or "self-dealing."  Abatie, 458 F.3d

15   at 968.  However, "[a] court may weigh a conflict more heavily if . . . the administrator . . . fails

16   adequately to investigate a claim or ask the plaintiff for necessary evidence," or if it "fails to credit

17   a claimant's reliable evidence."  Id. (citing Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461,

18   1463-64 (9th Cir. 1997); Nord, 538 U.S. at 834).  Because those factors are present here, the Court

19   accords moderate weight to the structural conflict of interest.  Considering the conflict of interest

20   and all of the circumstances discussed above, the Court finds that the Plan Administrator abused

21   its discretion in denying Plaintiff's claim for benefits.

22        **iii.    Remedy**

23        The Ninth Circuit has held that "[w]here an administrator's initial denial of benefits is

24   premised on a failure to apply plan provisions properly, [the court should] remand to the

25   administrator to apply the terms correctly in the first instance."  Pannebecker v. Liberty Life

26   Assurance Co. of Boston, 542 F.3d 1213, 1221 (9th Cir. 2008) (citing Saffle v. Sierra Pac. Power

27

28   Case No.: 5:14-cv-02524-EJD
     ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
     REMANDING FOR FURTHER PROCEEDINGS

18

United States District Court
Northern District of California

Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 460-61 (9th Cir. 1996)). However, "if an administrator terminates continuing benefits as a result of arbitrary and capricious conduct, the claimant should continue receiving benefits until the administrator properly applies the plan's provisions." Id. (citing Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001)).

Here, the Plan Administrator approved Plaintiff's initial application for LTD benefits only through July 31, 2012.  Although Plaintiff seeks to characterize the denial otherwise, it was not a termination of ongoing benefits.  Instead, the Plan Administrator only failed to apply the proper standard to Plaintiff's application for benefits past July 31, 2012.  "Where, as here, the benefits [were] limited in duration, retroactive benefits are not warranted."  Cox v. Allin Corp. Plan, No. 12-cv-5880-SBA, 2015 WL 1737764, at *6 (N.D. Cal. Apr. 14, 2015); see also Creer v. AT&T Umbrella Benefit Plan No. 1, No. 09-cv-2210-MCE, 2012 WL 397717, at *6 (E.D. Cal. Feb. 7, 2012) (denying a request to reinstate benefits where the court could not "say on the record before [it] whether Plaintiff would have continued to receive benefits or not"); Langston v. N. Am. Asset Dev. Corp., No. 08-cv-2560, 2009 WL 941763, at *9 (N.D. Cal. Apr. 6, 2009) (declining to reinstate benefits because the plan "ha[d] failed to make adequate findings" and because the plaintiff had only begun to receive benefits "on a temporary basis").  The Court will remand to the Plan Administrator to make an initial determination of Plaintiff's claim in light of all of the evidence that it should have considered in the first instance.  However, no reinstatement of benefits is appropriate here.

**B.    Claims for Retirement Benefits**

Plaintiff admits that she has filed no claim under the Retirement Plans, but Plaintiff argues that benefits under the Retirement Plans are awarded automatically once she is awarded LTD benefits under the Plan.  Even assuming that this is true, because the Court has remanded for the Plan Administrator to decide whether Plaintiff is entitled to LTD benefits, it is premature for the Court to consider whether she may also receive benefits under the Retirement Plans.  The Court

19

United States District Court
Northern District of California

1   will grant summary judgment on these claims to the Retirement Plans.

2      **C.**   **Claim for Statutory Penalties**

3      Plaintiff seeks statutory penalties against ALI and Sipes for depriving her of two

4   documents: the contract between Matrix and Abbott and the document delegating authority to

5   decide second-level appeals.  ERISA provides that a plan administrator "who fails or refuses to

6   comply with a request for any information which such administrator is required . . . to furnish to a

7   participant or beneficiary . . . within 30 days after such request" can, at the Court's discretion, be

8   liable for statutory penalties of up to $100 per day from the date of the failure or refusal.  29

9   U.S.C. § 1132(c)(1).  29 U.S.C. § 1002(16)(A) defines a plan "administrator" as "the person

10  specifically so designated by the terms of the instrument under which the plan is operated [or,] if

11  an administrator is not so designated, the plan sponsor."  The Ninth Circuit has held that only the

12  plan administrator may be held liable under § 1132(c)(1).  See Sgro v. Danone Waters of N. Am.,

13  Inc., 532 F.3d 940, 945 (9th Cir. 2008).

14     Plaintiff concedes that neither ALI nor Sipes is the plan administrator.  However, Plaintiff

15  contends that ALI should be liable because the Plan does not identify a specific administrator, so

16  that the Plan sponsor is liable by operation of law.  See 29 U.S.C. § 1002(16)(A).  But the Plan

17  specifically designates Abbott's Divisional Vice President, Compensation and Benefits as the Plan

18  Administrator.  AR 0009; AR 0042; see also AR 0080; AR 0102; AR 0124; AR 0146.  In any

19  case, ALI is not the Plan sponsor; Abbott is.[4]  ALI is not a valid defendant for this claim.

20     As for Sipes, Plaintiff contends that he was the de facto administrator of the Plan.

21  Although other circuits may have held a de facto plan administrator liable under § 1132(c)(1), the

22  Ninth Circuit has been clear that this provision only permits a plaintiff to pursue the plan's

23  administrator and not a third party making a benefit determination.  Sgro, 532 F.3d at 945.  Other

24

25  [4] Plaintiff argues that she intended to sue Abbott and that the Court should treat her complaint
26  accordingly.  Though Abbott and ALI may have similar names, they are distinct as a legal matter.
    Plaintiff has made no attempt to amend the complaint to name the correct party.  Nevertheless,
27  because the claim fails for several other reasons, granting leave to amend at this stage would be
    futile.

20

28  Case No.: 5:14-cv-02524-EJD
    ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
    REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

courts in this circuit have cited <u>Sgro</u> in rejecting the de facto administrator doctrine.  <u>See, e.g.</u>,

<u>McCollum v. Blue Shield of Cal. Life & Health Ins. Co.</u>, No. 12-cv-1560-PSG, 2012 WL

5389711, at *4 (N.D. Cal. Nov. 2, 2012); <u>Talbot v. Reliance Standard Life Ins. Co.</u>, No. 14-cv-

0231-DJH, 2015 WL 4134548, at *2 (D. Ariz. June 18, 2015).  In this circuit, Sipes cannot be

liable as a de facto administrator under § 1132(c)(1).

   Moreover, Plaintiff does not dispute that she never specifically requested the documents at

issue.  Plaintiff contends that she should have received them in response to her request for "[a]ll

documents governing the Plan, including . . . any other instruments under which the Plan is

established or operated."  AR 0440; AR 0557; AR 1136.  The Court finds that the documents

Plaintiff now seeks are not "instruments under which the Plan is . . . operated."  <u>See</u> Dkt. No. 49-2,

¶ 8; Dkt. No. 55-2, ¶¶s 14-15.  At the very least, Defendants did not act wrongfully by interpreting

the request to exclude these documents.  In any case, Plaintiff has identified no meaningful

prejudice from the failure; the delegation document is in the administrative record, AR 0707, and

the agreement with Matrix appears to bear no relevance to Plaintiff's claims.  <u>See</u> Dkt. No. 55-2,

¶¶s 14-15.  The Court will grant summary judgment on this claim to Defendants.

## IV. ORDER

   Plaintiff's motion for summary judgment is GRANTED IN PART, only as to her claim

that the Plan Administrator abused its discretion in denying her request for LTD benefits.

Defendants' motion for summary judgment is GRANTED IN PART as to Plaintiff's second, third,

and fourth causes of action.  The Court remands this matter to the Plan Administrator for a

determination of Plaintiff's request consistent with this Order.

   The Court will retain jurisdiction of this action while the matter is on remand.  <u>See</u> <u>Frei v.</u>

<u>Hartford Life Ins. Co.</u>, No. 05-cv-1191-EDL, 2006 WL 1409360, at *5 (N.D. Cal. May 23, 2006);

<u>Lancaster v. U.S. Shoe Corp.</u>, 934 F. Supp. 1137, 1170 (N.D. Cal. 1996).  The clerk shall

ADMINISTRATIVELY CLOSE this file.  Plaintiff and Defendants shall submit a brief Joint

Status Report apprising the Court of the status of Plaintiff's LTD benefits determination on

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California

1   September 15, 2016, and continuing every three months thereafter.

2        **IT IS SO ORDERED.**

3   Dated: June 30, 2016



4   _____

5   EDWARD J. DAVILA
    United States District Judge

Case No.: 5:14-cv-02524-EJD
ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS

United States District Court
Northern District of California