1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

| OLGA GORBACHEVA, | Case No. 5:14-cv-02524-EJD |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| ABBOTT LABORATORIES EXTENDED DISABILITY PLAN, et al., | |
| Defendants. | Re: Dkt. Nos. 89, 91 |

In this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, Plaintiff Olga Gorbacheva ("Plaintiff") seeks long-term disability ("LTD") payments from Defendant Abbott Laboratories Extended Disability Plan ("the Plan" or "Defendant") after her request for benefits was denied. In June of 2016, the Court remanded the action to the Plan Administrator to make an initial determination of Plaintiff's claim in light of all of the evidence it should have considered in the first instance. On remand, the Plan Administrator upheld the termination of Plaintiff's benefits. The Plan Administrator found that Plaintiff did not meet the Plan's definition of disabled beyond July 31, 2012. The case was reopened in January of 2017.

Presently before the Court are Plaintiff's motion for "Judgment On The Record Or, In The Alternative, An Order Setting the Case for Trial De Novo" and Defendant Abbott Laboratories Extended Disability Plan's ("Defendant") motion for summary judgment. See Dkt Nos. 89, 91. Having considered the parties' arguments and evidence, Defendant's motion for summary judgment is granted and Plaintiff's motion for judgment on the record is denied.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Plan**

Plaintiff was a participant in the Plan, which entitled her to benefit payments if she was "Disabled" within the meaning of the Plan.  The Plan would pay benefits for 24 months so long as Plaintiff was completely prevented from performing all the duties required to be performed in her own occupation or employment.  Afterwards, the Plan would pay benefits if Plaintiff was completely prevented from performing any occupation or employment for which Plaintiff was qualified or could reasonably become qualified, based on her training, education, or experience.

The Plan Administrator, identified in the Plan as the Divisional President, Compensation and Benefits, at Abbott Laboratories ("Abbott"), delegated the duties of making initial claims determinations and deciding initial appeals to a third party, Matrix Absence Management, Inc. ("Matrix").  The Plan also provided for second-level appeals.

**B.    Plaintiff's Application for Benefits**

Plaintiff was employed by Abbott as a Clinical Research Associate II.  Her job involved monitoring clinical trials for new products, product improvements, and product process changes. It required her to do a variety of tasks on the computer and on the telephone, including writing in connection with clinical trials and sites.  The job also required her to travel to some extent.

Plaintiff suffers from a number of conditions, including degenerative disc disease, spondylosis and scoliosis.  She also has a history of knee problems, such as osteoarthritis and tears of her meniscus and posterior cruciate ligament.  In 2011, Plaintiff applied for short-term disability benefits, citing continuous pain in her lower back and right leg resulting from these issues.

Matrix approved Plaintiff's application for short-term disability benefits, with an expected return-to-work date of October 19, 2011.  Plaintiff was unable to return to work on the expected date.  In January of 2012, Plaintiff applied for LTD benefits.  Matrix approved Plaintiff for LTD benefits from February 20, 2012, the first day Plaintiff was eligible for LTD benefits, through May

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

20, 2012, and later extended the benefits through June 10, 2012.  Because Plaintiff's nurse case manager ("NCM") was concerned about Plaintiff's sporadic treatment for systems, the NCM commissioned an independent medical examination ("IME") of Plaintiff.  On the basis of an IME conducted by L. Neena Madireddi, M.D. ("Dr. Madireddi") on July 11, 2012, Matrix denied Plaintiff LTD benefits beyond July 31, 2012.

Plaintiff, through her counsel, timely appealed the denial of LTD benefits.  On March 25, 2013, Plaintiff informed Matrix that Plaintiff had been approved for Social Security benefits, although Plaintiff did not submit a copy of the favorable Social Security Disability Insurance ("SSDI") opinion.  Dkt. 91-1, Ex. 34.  Matrix commissioned a peer review of Plaintiff's file by an orthopedic surgeon, who concluded that Plaintiff was capable of performing her job.  A vocational rehabilitation consultant agreed that Plaintiff was able to perform her own occupation.  Matrix denied Plaintiff's appeal in May of 2013.

Approximately six months later, Plaintiff requested a second-level appeal.  During the months that followed, Plaintiff sought and obtained several extensions of the review deadline in order to submit further medical records and a release allowing the file reviewer to speak to Plaintiff's medical providers.  On January 16, 2014, Matrix informed Plaintiff's counsel that it would proceed with the second-level review based on the information received to date.

As part of the second-level review, the Plan had Plaintiff's records peer reviewed by a second set of doctors, including another orthopedic surgeon.  The surgeon concluded that Plaintiff was capable of performing sedentary work full-time.  Abbott employee James Sipes ("Sipes") denied Plaintiff's second-level appeal in February of 2014.  Dkt. 48-15.

On March 4, 2014, Plaintiff's counsel responded by letter and disputed the denial of Plaintiff's second-level appeal.  Sipes took no further action regarding Plaintiff's claim.

**C.    Plaintiff's Medical History**

On May 11, 2012, Matrix received updated records from Plaintiff's treating physician, Duc M. Nguyen, M.D. ("Dr. Nguyen") that indicated that Plaintiff did not follow a previously

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

suggested course of treatment that involved medication changes, epidural steroid injections, physical therapy and an evaluation by a pain psychologist, because Plaintiff was not sure the suggested course of treatment was helpful. Dr. Nguyen recommended conservative treatment instead. Dr. Nguyen also estimated that Plaintiff could return to work on August 10, 2012. Plaintiff also submitted a report from Dean F. Weinberg, D.C. ("Dr. Weinberg"), in which Dr. Weinberg estimated that she could return to work on July 2, 2012 and could still improve given further treatment.

There is no record of any of Plaintiff's treating physicians evaluating her after Dr. Nguyen's May 2012 records. On June 29, 2012, Dr. Nguyen issued another report finding that Plaintiff could not work at all, although it does not appear that he examined her in person within the previous month.

In July of 2012, Dr. Madireddi conducted an IME and concluded that Plaintiff did have medical conditions that resulted in certain limitations, but that Plaintiff was able to perform her job because her job description was sedentary.

During her first-level appeal, as indicated above, Matrix asked an orthopedic surgeon, William Andrews, M.D., C.I.M.E. ("Dr. Andrews"), to review Plaintiff's file. Dr. Andrews found that Plaintiff's complaints of pain from her degenerative disc disease were consistent with the objective clinical findings and that her pain was impacting her ability to function. However, Dr. Andrews also said that he did not see any findings of a significant motor defect or other objective findings which would preclude sedentary work, and that he did not believe Plaintiff was "completely incapacitated."

On October 30 and November 8, 2013, Plaintiff underwent a functional capacity evaluation ("FCE") by Alan Nelson and Dr. Diana Bubanja. The FCE report states that Plaintiff "was observed to provide full physical effort during the FCE as demonstrated by consistency on isometric testing and observed competitive performance behaviors." Dkt. 91-1, Ex. 12, p. 595. During the FCE, Plaintiff complained of continuous pain and fatigue and reported that she could

4

sit for no more than 15 minutes at a time. For the keyboard tolerance test, Plaintiff was able to type for 14 minutes before asking to stop and lie down on the floor for 20 minutes. The evaluation found that Plaintiff could not perform any functional level of work, including sedentary employment because, in part, Plaintiff could not sit for continuous periods or use her upper extremities repetitively. The evaluation also found that Plaintiff could not perform her previous job at Abbott or any similar job due to her restrictions.

Another orthopedic surgeon, Joanne R. Werntz, M.D. ("Dr. Werntz"), conducted a peer review of Plaintiff's medical history. Dr. Werntz found that Plaintiff had functional impairment from her knee and back issues, but that she could work full time with restrictions and limitations. Dr. Werntz found no objective documentation that would limit Plaintiff from performing all of the activities associated with her job. In his letter denying the second-level appeal, Sipes said that he had received and reviewed the FCE, but he adopted Dr. Werntz's conclusions.

**D. Procedural History**

Plaintiff filed this suit in June of 2014. See Dkt. No. 1 ("Compl."). Both sides moved for summary judgment on all claims. See Dkt. Nos. 46, 49. In June of 2016, the Court issued an order finding that the record contained a great deal of evidence to support the Plan Administrator's decision denying Plaintiff disability benefits and that given the conflicting medical evidence, the Plan Administrator's conclusions regarding the evidence were reasonable and did not constitute an abuse of discretion. Nevertheless, the Court found that the Plan Administrator abused its discretion by failing to consider the FCE and the decision awarding Plaintiff SSDI benefits. The Court accordingly remanded the case to the Plan Administrator to make an initial determination of Plaintiff's claim in light of all of the evidence that it should have considered in the first instance.

**E. Post-Remand History**

Following the remand, Plaintiff's counsel submitted 869 pages of new medical records reflecting treatment dates from November 20 to 29, 2000; January 17, 2002; November 8, 2010; February 24, 2014 to August 3, 2015; and February 18, 2016 to October 14, 2016. These records

5

1   included new MRI studies of Plaintiff's knee in 2014 and her spine in July 2016. In March of

2   2016, Plaintiff was also treated for hyponatremia (low levels of sodium).

3       At the time of its review of Plaintiff's claim on remand, the Plan had contracted with a

4   third party, MCMC, to perform certain services related to second-level reviews. MCMC had

5   Plaintiff's file peer-reviewed by a third set of doctors: Dr. Gitlow (board certified in psychiatry

6   and neurology); Dr. Kalen (board certified in orthopedic surgery), and Dr. Lobel (board certified

7   in physical medicine and rehabilitation/pain medicine).

8       Dr. Kalen determined that Plaintiff was "neurologically fully intact on all exams," and

9   concluded: "While the claimant does have functional impairment supported by the records

10  provided, her restrictions and limitations do not prevent her from performing the duties of her own

11  occupation from 08/01/2012 forward from an orthopaedic standpoint." Dkt. 90, p. 7 (Defendant's

12  Statement of Fact ("SOF") No. 43).[1] Dr. Kalen also explained her rationale for disagreeing with

13  the SSDI decision and the FCE. Id. No. 44 (RAR00119-120). Dr. Kalen stated that the SSDI

14  approval decision "does not influence the [Plaintiff's] medical records which I have reviewed.

15  The SSDI approval decision does not impact whether or not the [Plaintiff] meets the definition of

16  Disability or Disabled under section 2.6 of the Plan." Id. With respect to the FCE, Dr. Kalen

17  noted that Plaintiff "could not complete the evaluation strictly based on her perceived subjective

18  complaints. Because of perceived subjective complaints, she did not provide full effort and was

19  therefore unable to complete the evaluation; however, this was not due to physical functional

20  impairment, but instead due to perceived subjective complaints." Id. Dr. Kalen also concluded

21  that the objective findings, including imaging of her knee and spine, were not consistent with the

22  FCE.

23      Dr. Lobel determined that Plaintiff could work her own occupation, even though Plaintiff

24  had certain limitations and restrictions. SOF No. 45 (RAR00104). Dr. Lobel noted his agreement

25

26  _____

    [1] Plaintiff has not filed a Responsive Statement as required by the Court's Standing Order for Civil
    Cases. Therefore, each of the facts set forth in Defendant's SOF is deemed admitted.

27
28  ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
    PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

*United States District Court*
*Northern District of California*

with Dr. Kalen, stating: "We agree that the restrictions and limitations are appropriate, possibly overstated based on quality of MRI spine report and FCE test lacking validity. These restrictions and limitations are permanent and allow the claimant to return to her own occupation." Id. Dr. Lobel also explained his rationale for disagreeing with the SSDI decision as follows: "SSDI is determined by a judge, and is different than the medical determination of disability by a qualified physician within the scope of their specialty. When reviewing this case, specifically whether or not the claimant meets the definition of Disability or Disabled under section 2.6 of the Plan, the entirety of the claimant's medical history must be considered, and the SSDI determination is one piece of that history. It does not in and of itself mean that she meets the Plan definition of Disability or Disabled." Id. (RAR00105). In an addendum dated December 14, 2016, Dr. Lobel also stated in pertinent part, "[u]nlike the SSDI determination, the medical evidence provided for review does not support the claimant to be impaired to the extent that she would be unable to perform the duties of her own occupation, thus she does not meet the definition of disability under the Plan." Id. No. 48 (RAR001478). With respect to the FCE, Dr. Lobel noted the following:

> There was clear catastrophizing behaviors in driving, sitting, standing, [and] walking. The exam reports reduced ROM in most body parts tested. The claimant complained during every test of pain and was unable to do several tests due to pain complaint. Examples include carrying eight pounds made her walk differently and caused her knee to lock up. Despite alleged severe pain all day, it should be noted that her heart rate remained low normal at 64 and BP (blood pressure) did not elevate outside normal ranges. The claimant took several breaks during the test including several requests for breaks during 14 minutes of typing. The claimant needed to lie down at the lunch break during the RCE and was fatigued for the afternoon session of day one. The claimant did not report for day two and later the test center received a call from the claimant's attorney that she had a knee injury suffered in a fall in her closet at home. The conclusion was the claimant could not work any job. No validity measures were used during this testing.

Id. No. 46 (RAR00109). In his addendum, Dr. Lobel stated that "[t]he FCE lacked appropriate validity measures and was not done to the standards of usual care and does not appear to have

United States District Court
Northern District of California

been done using one of the standardized techniques." Id. No. 48 (RAR001478). Dr. Lobel also stated that "the findings from the evaluation were inconsistent with the documented physical examinations, imaging, and the care offered by the numerous physicians treating the claimant." Id.

Dr. Gitlow concluded that no psychiatric restrictions or limitations were present and that Plaintiff could perform the essential functions of her own occupation. Id. No. 49 (RAR00135). Dr. Gitlow stated that the SSDI approval did not influence his opinion. Id.

The Plan Administrator, Pamela Hannon ("Hannon"), issued a lengthy written decision on December 29, 2016 denying Plaintiff's claim for benefits beyond August 1, 2012. Id. No. 59 (RAR04567-4585). The written decision includes a summary of the peer reviews completed by Drs. Kalen, Lobel, and Gitlow. Id. Based upon the entire body of medical evidence and the three peer reviews, the Plan Administrator concluded that "while [Plaintiff] has been diagnosed with certain limitations, she is nonetheless able to perform the essential functions of her sedentary position." Id. No. 60 (RAR04579). The Plan Administrator also explained why the FCE and SSDI decision did not alter her conclusion. With respect to the FCE, the Plan Administrator stated, among other things, that she agreed with Drs. Kalen and Lobel that the FCE is contrary to the great weight of medical evidence both before and after the FCE. Id. (RAR04581). The Plan Administrator also stated that the FCE was inconsistent with the lack of other medical treatment in 2013. Id.

With respect to the SSDI decision, the Plan Administrator stated that the award decision did not support a finding of disability under the Plan. Id. (RAR04581). The Plan Administrator reasoned as follows:

> As a matter of fact, the disability award actually concludes that your client is able to perform sedentary work, and the description of your client's physical abilities to perform sedentary work, and the description of your client's physical abilities in the award is fully consistent with the sedentary duties required by her job [citation omitted] and with the abilities described by the IME, Dr. Sheehy (the state medical consultant) and the peer reviewers.

8

Id. The Plan Administrator acknowledged that the SSDI decision was based on a finding that Plaintiff's past work exceeded her sedentary ability, but noted that the disability award did not include a description of what information was considered regarding Plaintiff's job duties. Id. The Plan Administrator also found that the cognitive restrictions identified in the SSDI decision were not supported by the medical evidence. Specifically, the Plan Administrator found that the restriction "to simple, routine, repetitive tasks with only simple work related decisions and few workplace changes," was not supported by the medical evidence. The Plan Administrator also noted that even with the restriction cited above, the SSDI determination was that Plaintiff could perform sedentary work. Id. (RAR4581-82). Further, the Plan Administrator opined that the weight of the evidence, including the opinions of Drs. Mosbach and Gitlow, supported a determination that Plaintiff did not have any mental or cognitive impairment that rendered Plaintiff disabled. The Plan Administrator also noted that there was no evidence of any ongoing treatment between May 10, 2012 and June 4, 2012. Id. (RAR04582). The Plan Administrator also noted that the SSDI benefits decision was governed by a Social Security Act regulation that classified Plaintiff as being of "advanced age" and the application of the "grids" in the Social Security Medical Vocational Guidelines. Id. (RAR04582-83). Because the Plan contained no similar presumptions for "advanced age," the Plan Administrator concluded that the SSDI award did not support a finding of disability under the Plan. Id. (RAR04583).

The Plan Administrator also reviewed the additional medical records submitted on remand and concluded that they did not alter her decision that Plaintiff was not disabled as defined by the Plan. Id. (RAR04583). Specifically, the Plan Administrator considered Dr. Banks' report dated February 24, 2014. Dr. Banks stated that he had examined and treated Plaintiff on multiple occasions. Based upon his review of medical records and the functional capacity examination he performed, he concluded that Plaintiff was unable to work on a full-time basis in any capacity because of her back and knee conditions. Dkt. 91-1, Ex. 13.

The Plan Administrator rejected Dr. Banks' determination that Plaintiff was disabled

9

because (a) there was no indication as to what information Dr. Banks was provided regarding Plaintiff's job duties, (b) there was no evidence that Dr. Banks had conducted an extensive examination of Plaintiff previously, and (c) Dr. Banks did not identify any notable conditions.  Id. (RAR04584).  Lastly, the Plan Administrator found that the remaining 869 pages Plaintiff submitted on remand did not show any significant changes to Plaintiff's condition that would support a finding that she was disabled in 2012.  Id. (RAR04584).

Plaintiff objects to the Plan Administrator's determination on essentially two grounds.  First, Plaintiff contends that a conflict of interest tainted the remand proceedings.  Second, Plaintiff contends that the evidence shows she is disabled.

## II.  LEGAL STANDARDS

### A.    Standard of Review

For the reasons set forth in the Court's earlier order of remand (Dkt. 61), the Court will review the Administrator's decision for an abuse of discretion.  Because the abuse of discretion standard applies, the Court rejects Plaintiff's argument that Rule 52 instead of Rule 56, Fed.R.Civ.P., applies.  Compare Rabbat v. Standard Ins. Co., 894 F.Supp.3d 1311, 1313-14 (D. Or. 2012) ( "The Ninth Circuit has often held that in an ERISA benefits case, where the court's review is for abuse of discretion, summary judgment is a proper 'conduit to bring the legal question before the district court.'") and Cox v. Allin Corp. Plan, 70 F.Supp.3d 1040, 1050 n.8 (N.D. Cal. 2014) ("De novo review on ERISA benefits claims is typically conducted as a bench trial under Rule 52.").

Under the deferential abuse of discretion standard, "a plan administrator's decision 'will not be disturbed if reasonable.'"  Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929 (9th Cir. 2012) (quoting Conkright v. Frommert, 559 U.S. 506, 512 (2010)).  The court "may review only the administrative record when considering whether the plan administrator abused its discretion."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006).  However,

ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

unless explicitly required by the terms of the plan at issue, a claimant need not have presented every legal theory or issue to the plan administrator before raising it in court. See Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 629-33 (9th Cir. 2008).

A plan administrator's decision is unreasonable if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts of the record." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (quoting United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). The court should consider factors such as the quality and quantity of the medical evidence, whether the plan administrator commissioned an in-person medical review or simply relied on the claimant's existing medical records, whether the administrator provided its independent experts with all relevant evidence, and whether the administrator considered a contrary disability determination by the Social Security Administration. Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 630 (9th Cir. 2009) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S.105, 118 (2008)).

A plan administrator's conflict of interest, such as where the claim fiduciary is also the funding source for the plan, is another factor that the court should weigh when reviewing the administrator's decisions for abuse of discretion. Metro. Life Ins. Co. v. Glenn, 554 U.S. at 111-12. However, such a conflict does not lead to a less deferential standard of review; rather, like most procedural violations, the conflict is merely one additional factor to be considered in determining whether a fiduciary abused its discretion. Id. The court may find an abuse of discretion only if, after weighing all of these factors, it is "left with a definite and firm conviction that a mistake has been committed." Salomaa, 642 F.3d at 676 (quoting Hinkson, 585 F.3d at 1262).

**B.      Summary Judgment Standard**

Ordinarily, a motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). If the abuse

11

ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

of discretion standard governs an ERISA case, however, "'a motion for summary judgment is,' in most respects, 'merely the conduit to bring the legal question before the court.'" Stephan, 697 F.3d at 930 (quoting Nolan v. Heald Coll., 551 F.3d 1148, 1154 (9th Cir. 2009)). As a result, "the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Id. (quoting Nolan, 551 F.3d at 1154). However, when the court considers evidence outside the administrative record to evaluate a potential conflict of interest, the court must view the evidence in the light most favorable to the non-moving party and assess whether there is a genuine issue of material fact. Id. (quoting Nolan, 551 F.3d at 1154).

## II.    DISCUSSION

### A.    Timeliness of Appeal

Notwithstanding the Court's prior ruling that the abuse of discretion standard of review applies, Plaintiff contends that Defendant's failure to provide a timely appeal warrants de novo review. See e.g. Jebian v. Hewlett-Packard Co. Emply. Ben. Org. Income Prot. Plan, 349 F.3d 1098, 1103 (9th Cir. 2003). Plaintiff contends that Defendant was required, but failed, to decide Plaintiff's claim on remand no later than September 28, 2016, which is ninety days after the Court's June 30, 2016 Order Granting in Part Motions for Summary Judgment and Remanding For Further Proceedings. Dkt. 74, p.4. Alternatively, Plaintiff contends that Defendant was required, but failed, to decide Plaintiff's claim on remand no later than October 13, 2016 pursuant to 29 C.F.R. §2560.503-1(f)(3). Id. In response, Defendant contends that Plaintiff caused a delay during the remand by waiting until October 5, 2016 to submit 869 pages of new documents for consideration. According to Defendant's calculations, the Plan Administrator had forty-five days from the day she received the 869 pages of documents plus another forty-five days because of "special circumstances" to render a decision. See 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i).

"ERISA procedural violations do not alter the standard of review unless the violations cause the beneficiary substantive harm." Dimery v. Reliance Standard Life Ins. Co., 597 F.App'x 408, 409-410 (9th Cir. 2015) (citing Abatie, 458 F.3d at 971)). Here, regardless of the parties'

1   respective computations of the timeliness of the Plan Administrator's decision, Plaintiff has not

2   identified any substantive harm resulting from Defendant's purportedly untimely decision that

3   would justify deviating from the abuse of discretion standard of review.

4   **B. Alleged Procedural Irregularities**

5         Plaintiff contends that during the remand, the Plan Administrator improperly "developed

6   brand new evidence in the form of written reports by physicians" without providing Plaintiff an

7   opportunity to review or respond to the reports. Dkt. 74, p.5. Plaintiff argues that Defendant

8   essentially treated the remand as a "redo of the second level appeal that had the effect of insulating

9   the plan administrator's rationales for denying the claim from appeal." Dkt. 93, p. 9. To "cure"

10  this alleged procedural irregularity, Plaintiff requests that the Court conduct a de novo review of

11  the Plan Administrator's decision and consider rebuttal evidence in the form of a 2017 FCE and

12  Dr. Bank's 2017 letter. Dkt. 83, p.6. Defendant counters that the Plan Administrator was

13  required to consult with physicians during the appeal process and had no legal obligation to

14  provide the physician reports to Plaintiff prior to issuing a decision.

15        Neither party's legal authority on this issue is directly on point. Plaintiff's only citation is

16  to an out-of-circuit case which does not address whether a claimant is entitled to an administrative

17  appeal of a claim on remand prior to returning to district court. See Solnin v. Sun Life & Health

18  Ins. Co., 766 F.Supp.2d 380, 393-94 (E.D. N.Y. 2011). Defendant's legal authority is similarly

19  off point. The Regulations relied upon by Defendant govern administrative appeals. See 29

20  C.F.R. §2650.503-1(h)(3)(v). Caselaw cited by Defendant arises in the context of administrative

21  appeals, not remands. See e.g., Montoya v. Reliance Standard Life Ins. Co., No. 14-2740 WHO,

22  2015 WL 1056560, at *5 (N.D. Cal. March 10, 2015) ("[T]he cases that have addressed this issue

23  directly stand for the general proposition that a claimant is not 'guaranteed' the right to review

24  IMEs or peer review reports prior to the determination of an administrative appeal."); Landes v.

25  Intel Corp.'s Long Term Disability Plan, No. 08-5382 JW, 2010 WL 3155869, at *2-3 (N.D. Cal.

26  Aug. 9, 2010) ("full and fair review" to which claim is entitled does not include reviewing the

27                                    13
    CASE NO.: 5:14-CV-02524-EJD

28  ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
    PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

opinions of peer reviewers generated in course of appeal prior to a determination on appeal).

In the absence of any legal authority directly on point, the Court finds that Plaintiff's inability to appeal or respond to the new evidence developed on remand did not amount to a "wholesale and flagrant" violation of the procedural requirements of ERISA that would warrant de novo review. See Abatie, 458 F.3d at 971. Instead, the Court will weigh it as a factor in determining whether there is an abuse of discretion. See id. at 968-969. In addition, as a "cure" for the alleged procedural irregularity, the Court will consider Plaintiff's rebuttal evidence (i.e. the 2017 FCE and Dr. Bank's 2017 letter). See infra Section "H."

Plaintiff next contends that there was a procedural irregularity insofar as the reviewing physicians made no attempt to contact Plaintiff's treating physicians, and instead chose to contact a doctor Plaintiff had not seen in over four years. Dkt. 74, p.5. The assertion is belied by the administrative record. Dr. Kalen contacted Dr. Nguyen's office and Dr. Gitlow contacted Dr. Spector's office. See Dkt. 90, p.16 (RAR00119, 00135).

## C. Alleged Conflict of Interest

Plaintiff contends that Defendant's counsel was directly involved in the Plan Administrator's review on remand and that the remand process was tainted by a major conflict of interest. More specifically, Plaintiff contends that before the Plan Administrator reviewed a single document in the case, a denial letter had already been drafted in her name by MCMC. Dkt. 93, p.8. Further, Plaintiff contends that Defendant's counsel, not the Plan Administrator, "provided the entirety of the Plan Administrator's 'rationale' for denying the claim on remand," including all of the analysis of the FCE and SSDI decision. Plaintiff's Motion, p. 20.[2] Plaintiff argues that the Plan Administrator abdicated her responsibility to act as a fiduciary and thereby deprived Plaintiff of a full and fair review on remand. As a remedy, Plaintiff asks the Court to conduct a de novo

---

[2] Plaintiff also asserts that the Plan Administrator "received email memoranda prepared by opposing counsel that provide a list of reasons for rejecting Ms. Gorbacheva's evidence and denying the claim." Dkt. 91, p.18. This assertion is not supported by the record. The emails were sent between outside counsel; they were not sent to the Plan Administrator. See Dkt. 92, p. 18.

14

United States District Court
Northern District of California

review of the Plan Administrator's decision or in the alternative to issue an order requiring the Plan to pay monthly benefits until such time as a full and fair review of the claim demonstrates that Plaintiff is not disabled.

In response, Defendants have submitted two declarations from the Plan Administrator in which she represents that she received and thoroughly reviewed all of the medical evidence, including the FCE and SSDI decision, and other post-remand evidence, without pre-judging Plaintiff's claim. Dkt. No. 89-2, p.3. The Plan Administrator also reviewed the opinions of Drs. Kalen and Lobel. Dkt. 92-1. She sought advice from employees who assisted with Plan claims. Dkt. 89-2, p.3. The Plan Administrator states unequivocally that she alone made the decision that the medical evidence did not support Plaintiff's claim. Dkt. 89, p.2; see also Dkt. 92-1, p.3. The Plan Administrator consulted with outside counsel to ensure that she complied with the Court's remand order and that she fully understood the SSDI process and decision. Dkt. 92-1, p.3. After discussing these matters with counsel, the Plan Administrator "adhered to [her] prior conclusion that Plaintiff's claim should be denied." Dkt. 89-2, p. 3; Dkt. 92-1, p.3. The Plan Administrator acknowledges that counsel assisted in drafting portions of the decision letter. Dkt. 89, p.4. The Plan Administrator, however, represents that she "independently reviewed, agreed with, and adopted the draft letter." Id.

Plaintiff objects to any consideration of the Plan Administrator's declarations, asserting that the declarations are not part of the administrative record and Defendant did not disclose its intent to rely on the Plan Administrator's declarations. Dkt. 93, pp. 4-5. If the declaration is not stricken, Plaintiff requests an opportunity to depose the Plan Administrator.

Plaintiff's first argument is unpersuasive. Evidence outside the administrative record may be considered to determine if there is a conflict of interest. See Stephan v. Unum Life Ins. Co. of Am., 697 F.3d at 930 ("Evidence outside the administrative record is 'properly considered' in determining the extent to which a conflict of interest affected an administrator's decision."); Tremain v. Bell Industries, Inc., 196 F.3d 970, 976-77 (9th Cir. 1999) (evidence outside

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   administrative record may be considered to determine if a plan administrator's decision was

2   affected by a conflict of interest).  Here, Plaintiff asks the Court to infer from circumstantial

3   evidence that the remand process was infected by a conflict of interest.  In light of Plaintiff's

4   allegation, Defendant was entitled to provide an explanation of the Plan Administrator's decision

5   making process.

6        Plaintiff's second argument is also unpersuasive.  Plaintiff admits that Defendant disclosed

7   the Plan Administrator, Hannon, as a person with discoverable information.  Dkt. 93-1, p.2.

8   Plaintiff's counsel chose not to depose her and instead to pursue other discovery.  Id.  Plaintiff's

9   request to take the Plan Administrator's deposition at this late date is denied because Plaintiff has

10  not made the requisite showing under Rule 56(d), Fed.R.Civ.P.  Plaintiff argues that the proposed

11  deposition is likely to lead to evidence that contravenes Hannon's declarations because the

12  administrative record shows Hannon did not start her review of Plaintiff's file until after MCMC

13  had already prepared a draft decision denying Plaintiff's claim.  Plaintiff, however, has not

14  presented any evidence that contradicts Hannon's representations under penalty of perjury that she

15  reviewed all the evidence and that she alone made the decision on Plaintiff's claim.  Furthermore,

16  the Plan Administrator's consultation with counsel was not procedurally improper.  See e.g. Ford

17  v. Motorola Inc. Involuntary Severance Plan, No. 03-1271 PHX, 2007 WL 162680, at *6 (D. Ariz.

18  Jan. 18, 2007) ("nothing set forth in ERISA prohibits plan administrators from relying on

19  information provided by and following the recommendations of either in-house or outside

20  attorneys for the employer who sponsors the plan."); see also Hensley v. NW. Permanente P.C.

21  Ret. Plan & Trust, 258 F.3d 986, 997, n.6 (9th Cir. 2001) (affirming district court's determination

22  that it was not improper for director of pensions and benefits to consult outside counsel)

23  (overruled on other grounds).

24        Notwithstanding the foregoing, the extent to which the Plan Administrator relied upon

25  litigation counsel to assist in drafting the decision letter is a concern.  See Florence Nightingale

26  Nursing Service v. Blue Cross Blue Shield of Alabama, 41 F.3d 1476, 1482 (11th Cir. 1995)

16

CASE NO.: 5:14-CV-02524-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   (conflict of interest found where claims administrator was fully aware of litigation between insurer

2   and insured and the claims administrator's task was explained to her by Blue Cross's litigation

3   counsel, who also assisted administrator in editing her opinion).   Nevertheless, litigation

4   counsel's involvement in the drafting of the Plan Administrator's decision letter does not rise to

5   the level of a "wholesale and flagrant violation[] of the procedural requirements of ERISA."

6   Abatie, 458 F.3d at 971.  Therefore the request for de novo review, or in the alternative for an

7   award of benefits pending further review, is denied.  Instead, in accordance with Abatie, counsel's

8   involvement in drafting the denial letter will be weighed as a factor in determining whether there

9   is an abuse of discretion.   Abatie, 458 F.3d at 968-969.

10  **D. Evidence of Disability Prior to Remand**

11          Plaintiff asserts that she suffers primarily from degenerative joint conditions in her knees

12  and spine.  Plaintiff relies upon the opinions of her treating physicians, Dr. Ting (Dkt. 91-1, Ex.

13  7), and Dr. Nguyen (Dkt. 91-1, Exs. 10, 11), to show that she is unable to work in any capacity

14  (sedentary or otherwise) due to pain and restricted mobility caused by these conditions.  Plaintiff

15  also cites to the opinions of her physiatrist, Dr. Keane, her chiropractor (Dkt. 91-1, Ex. 6), Dr.

16  Weinberg (Dkt. 91-1, Ex. 8), and her pain specialist, Dr. Penhollow (Dkt. 91-1, Ex. 9), as

17  additional evidence that she is disabled.

18                    Records from Drs. Ting, Keane, Weinberg and Nguyen

19          The records from Drs. Ting, Keane, Weinberg, and Nguyen were evaluated by the Court

20  previously.  See Order Granting in Part Motions for Summary Judgment and Remanding for

21  Further Proceeding, p 6.  These records do not include an evaluation of Plaintiff after May 2012

22  and therefore are not helpful in assessing Plaintiff's status after benefits ceased.  For example, Dr.

23  Ting filled out Work Status forms and checked the boxes indicating his opinion that Plaintiff was

24  unable to return to work, but these records are dated November 2, 2011, December 29, 2011 and

25  February 23, 2012.  Dkt. 91-1, Ex. 7; Dkt. 48-12, p. 52.

26          Dr. Keane saw Plaintiff on August 19, 2011, October 3, 2011, and November 11, 2011,

27                                              17

28  ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
    PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

well before benefits ceased. Dkt. 91-1, Ex. 6; Dkt. 48-12, p. 77-80 (recommending that Plaintiff be off work for two months). Dr. Keane examined Plaintiff in August of 2011 and found that she had significant guarding of all cervical and lumbar motion; some obvious spasm; good forward flexion, but very limited lumbar extension; sensation intact throughout the upper and lower extremities; and no motor deficits. Dr. Keane gave Plaintiff a "slip to be off work for eight weeks" and recommended Plaintiff take some time off to rest, do exercises and take anti-inflammatories. In October of 2011, Dr. Keane recommended Plaintiff take six weeks off from work and referred her to physical therapy for her back. In November of 2011, Dr. Keane stated that Plaintiff was dealing with chronic pain, but he did not feel Plaintiff was a good surgical candidate. Dr. Keane recommended Plaintiff take another two months off work and suggested consulting with Stanford Pain Clinic.

Plaintiff was seen by Dr. Weinberg many times. Her last visit with Dr. Weinberg was on May 18, 2012. Dkt. 48-12, p. 7. Plaintiff reported high levels of neck and spine pain. Dr. Weinberg's prognosis for the patient was "guarded" and he recommended that Plaintiff continue with physical therapy, maintain a home exercise program and follow up in a month. Id.

Only Dr. Nguyen's evaluation supported work restrictions continuing after July of 2012. Dr. Nguyen issued a report on June 29, 2012, finding that Plaintiff could not work at all, although it did not appear that he had examined her in person within the previous month. Dkt. 91-1, Ex. 10. Although Dr. Nguyen determined Plaintiff was disabled, there was also evidence in the record indicating that Plaintiff could do sedentary work. See Order Granting In Part Motions for Summary Judgment and Remanding for Further Proceedings.

Given the ambiguous evidentiary record, the Court previously found the Plan Administrator did not commit an abuse of discretion when evaluating the pre-remand medical records and finding Plaintiff was not disabled beyond July 31, 2012. Id. Having reviewed the voluminous administrative record for a second time, the Court reaffirms its previous determination that the Plan Administrator did not commit an abuse of discretion in light of the conflicting

18

evidence in the pre-remand medical records.

Records from Dr. Penhollow

Dr. Penhollow evaluated Plaintiff on March 1, 2012, while Plaintiff was still receiving benefits. Dkt. 91-1. Ex. 9. He noted that Plaintiff had "axial neck, mid back, and low back pain, and right lower extremity radiculopathy down the posterior aspect of her leg, as well as a history of bilateral meniscal tears in her knees and is status post bilateral repair." Id. Dr. Penhollow noted that Plaintiff had residual pain in her right knee. Id. He also noted that "patient denies an inciting event and thinks she has always had problems with her back" and now has daily pain Id. Dr. Penhollow reviewed Plaintiff's MRIs and concluded that Plaintiff had "multiple levels of degenerative disk and facet hypertrophy disease." Id. Dr. Penhollow made several recommendations for treatment, including medication, physical therapy, evaluation by a pain psychologist, and epidural steroid injections. Id. Dr. Penhollow noted that Plaintiff would follow up in approximately two to three weeks after the injections. Id. There are, however, no records of any follow up visits to show what Plaintiff's condition was in July of 2012 when benefits ceased.

E. Post Remand Consideration of Functional Capacity Evaluation ("FCE")

Plaintiff argues that the FCE buttresses the opinions of her treating physicians and shows that Plaintiff suffers from severe chronic pain; lacks the sitting tolerance, standing tolerance, and overall stamina to perform in any work environment; and has sub-sedentary physical capacities. Dkt. 91, p. 27. Defendant counters that the Plan Administrator's conclusions regarding the FCE were not an abuse of discretion.

On remand, the Plan Administrator stated several reasons why the FCE did not support of a finding of disability under the Plan: the FCE findings were inconsistent with the greater body of medical evidence; Dr. Kalen observed that Plaintiff was unable to complete the FCE not because of physical functional impairment, but due to perceived subjective complaints; Dr. Kalen found that Plaintiff's examinations showed her to be neurologically fully intact; objective findings documented in the records were not consistent with the findings of the FCE; Dr. Kalen found that

19

ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

the only medical treatment in 2013 is a notation of a joint injection on July 25, 2013; Dr. Kalen's

review of the records for the period of time after the FCE did not show any material changes to

Plaintiff's condition; Dr. Lobel determined that no validity measures were used during the FCE;

Dr. Lobel observed that despite Plaintiff's report of pain during the FCE, her heart rate did not

elevate outside normal ranges; and Dr. Lobel determined that the FCE was "very discordant from"

serial exams, the imaging and the care offered by physicians. The Plan Administrator agreed with

Drs. Kalen and Lobel and concluded that the FCE was contrary to the weight of medical evidence

both before and after the FCE; that the greater body of evidence supported the conclusion that

Plaintiff could perform the essential functions of her sedentary position; and that the FCE was

inconsistent with the lack of other medical treatment in 2013.

On its face, the Plan Administrator's evaluation of the FCE is neither illogical,

implausible, nor without support in inferences that may be drawn from the facts of the record.

Nevertheless, Plaintiff argues that the Plan Administrator should have rejected the opinions of Drs.

Kalen and Lobel because they were unreliable and unpersuasive for the reasons discussed below.

<u>Dr. Lobel's Findings re FCE</u>

Plaintiff contends that Dr. Lobel was unprofessional, responding to serious questions from

the Plan Administrator with "snark and sarcasm" that was "wordsmithed" for him by MCMC

employees. Dkt. 91, p. 28 (Plaintiff's Motion). Plaintiff also cites to Dr. Lobel's deposition

testimony where he states that back pain is "almost never" disabling and not a "true" disability.

Plaintiff argues that Dr. Lobel has preconceived biases against people who are disabled by back

pain and failed to factor pain into his analysis of whether Plaintiff could work.

Dr. Lobel's "snark and sarcasm," although unprofessional, do not render his opinions

unreliable or unpersuasive. The alleged wordsmithing amounts to minor edits that did not change

the substance of Dr. Lobel's report. <u>See</u> Dkt. 89, p. 29. The editing process is not a procedural

irregularity. Further, Plaintiff has taken Dr. Lobel's testimony out of context. Dr. Lobel

explained during his deposition that pain is a symptom of an underlying disease or process:

20

ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

Q. I'm trying to understand whether you were factoring Ms. Gorbacheva's pain into your analysis of her disability. Were you?

A. Pain is a symptom. It's not a disease. It is not a disability. It is not a disabling condition. It is just a symptom reported by the patient of the underlying process.

Q. So is it your opinion then that pain itself cannot impair someone from working?

A. Depending on the condition, I find very few painful conditions impairing when the subjective and objective criteria do not align.

Q. Fair enough. But that's not quite my question. I'm trying to figure out whether you understand pain itself to be capable of causing disability as in any other phenomenon?

A. I do.

MR. TORRES: I'm going to object to the extent that that calls for a legal conclusion. But go ahead and answer.

A. As a board certified pain specialist I would be the expert to make that determination medically. And pain is a subject phenomenon. It in itself does not cause disability.

Dkt. 92-2, pp. 91-92. Thus, contrary to Plaintiff's assertion, Dr. Lobel's full testimony does not expose a bias that would render his opinions unreliable or unpersuasive. Dr. Lobel explained in his report that "[t]here is significant discordance from [Plaintiff's] imaging, history, and examinations as well as lack of significant treatment or detailed assessment of her spinal pathology. . . . Pain is a subjective phenomenon and is whatever the individual reports it to be. There may be a greater affective than nociceptive component of this claimant's pain making the pain appear more severe than the imaging or examinations would typically account for." Dkt. 85-1, p. 104 (RAR00104). Ultimately, Dr. Lobel concluded that Plaintiff was able to perform the essential functions of her own occupation as of August 1, 2012 and beyond. Id.

Plaintiff next points to alleged factual errors in Dr. Lobel's report. Specifically, Plaintiff takes issue with Dr. Lobel's determination that the FCE lacked validity testing. Plaintiff contends that the FCE was conducted utilizing accepted AMA guidelines and industry specific reliable tools, such as inclinometry, goniometry, and dynamometry as well as muscle algometry and

21

standardized dexterity testing. Dkt. 91-1, p.514. Dr. Lobel's criticism, however, was not directed at the tools or the system of measurements used for the FCE. Rather, Dr. Lobel's concern was the validity of the testing. Dr. Lobel testified that there are standardized techniques such as the Blankenship FCE system that include validity and reliability measures. Dkt. 92, p. 96-97. Dr. Lobel testified that for grip dynamometer testing, for example, an FCE should use repeat serial testing with lots of distraction techniques to determine whether the person being evaluated is putting forth full effort. Id. at p. 96. Dr. Lobel concluded that this type of repeat testing did not appear to have been done in Plaintiff's case. Id. Given Dr. Lobel's explanation of validity testing, the Plan Administrator's reliance on Dr. Lobel's conclusion was not illogical, implausible or without support in the record.

Plaintiff also contends that Dr. Lobel erred when he concluded that the lack of elevated heart rate meant that Plaintiff was not experiencing a disabling degree of pain. According to Plaintiff, studies have shown that there is no relationship between back pain and heart rate. Dkt. 91, p. 22. Defendant counters that there are studies that show the contrary. Dkt. 92, p.7. The studies cited by Defendant are outside the administrative record and will not be considered. See Opeta v. Northwest Airlines Pension Plan for Contract Employees, 484 F.3d 1211, 1217 (9th Cir. 2007). Even accepting the veracity of Plaintiff's studies, however, it does not follow that the Plan Administrator's reliance on Dr. Lobel's conclusion was illogical, implausible or without support in the record. The lack of elevated heart rate was only one of several reasons Dr. Lobel gave for rejecting the results of the FCE.

In sum, the Plan Administrator did not abuse her discretion by relying on Dr. Lobel's analysis of the FCE.

<u>Dr. Kalen's Findings re FCE</u>

Plaintiff contends that Dr. Kalen's report is flawed by dishonesty and unprofessionalism. Dkt. 91, p.15 (Plaintiff's Motion, p.10). As an initial matter, Plaintiff complains that Dr. Kalen admitted being overwhelmed by the length of Plaintiff's file and being "frazzled" by the case. Dr.

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

Kalen's reaction to the length of the case is understandable and does not render her opinions unreliable or unpersuasive; the administrative record in this case is extraordinarily voluminous.

Plaintiff also contends that it was improper for Dr. Kalen to shred documents before completing her review of Plaintiff's case. Plaintiff's argument is baseless. Dr. Kalen explained during her deposition that she culled and shredded the documents that had nothing to do with the medical review, such as signed HIPAA papers and releases. Dkt. 92-2, p. 18. Dr. Kalen also explained that she shredded the remaining documents after she completed her review. Dkt. 92-2, p. 8.

Plaintiff next contends that Dr. Kalen's dishonesty and lack of professionalism is evidenced by the fact that the credentials she submitted to MCMC were inaccurate. Dr. Kalen, however, acknowledged during her deposition that she did not update her CV before submitting to MCMC. Dkt. 92-2, p.20. She also explained that she does not include her work for MCMC and similar companies on her CV because she uses her CV primarily to show academic credentials. Id. at p.21.

With respect to the substance of Dr. Kalen's report, Plaintiff faults MCMC for making substantial modifications to the report. Dkt. 91-1, p.16. In particular, Plaintiff contends that MCMC drafted the following portion of Dr. Kalen's report regarding the FCE: "The October/November 2013 FCE concluded that the claimant was unable to perform her own occupation; however the claimant could not complete the evaluation strictly based on her perceived subjective pain complaints. Because of perceived subjective complaints, she did not provide full effort and was therefore unable to complete the evaluation; however, this was not due to physical functional impairment, but instead due to perceived subjective complaints." Dkt. 91, p.16. It appears that MCMC drafted this portion of Dr. Kalen's report. See Abatie, 458 F.3d at 968-79. Nevertheless, while preparing her addendum, Dr. Kalen later opined in her own words that "the FCE was marred by poor effort and did not truly show the claimant's inability to perform her usual job." Dkt. 91-1, p. 469.

23

The FCE report supports Dr. Kalen's conclusion regarding Plaintiff's effort during the FCE. The FCE report states that Plaintiff "stood up, indicating that she did not want to enter data on a computer any longer due to back and neck discomfort." Dkt. 48-8, p. 26. When asked if she could perform a task that required using a phone with a traditional phone receiver while typing, she "reported an inability to use a phone on any repetitive basis due to neck discomfort and chose to leave the potential task incomplete." Id. The FCE report also indicates that at the end of the first day of testing on October 30th, Plaintiff told the staff that she would not be attending the following day of testing because of her discomfort. Id. ("Before leaving, Ms. Gorbacheva notified staff that she would not be attending the following day, October 31, because of her high level of discomfort, but would attempt to complete her second program day on Friday, November 1st.").

When Plaintiff did not arrive for testing on Friday, November 1st, the FCE evaluator called Plaintiff and was told that Plaintiff "would not be able to attend because she was 'hurting everywhere' and was having a hard time 'getting around the house.' She believed it would be too dangerous to drive from her home to downtown Oakland." Id. at p. 27. The same day, Plaintiff's counsel contacted the FCE evaluator and said that the completion of the Job Simulation Assessment would be postponed until further notice because Plaintiff had fallen and injured her knee. Id.

Plaintiff returned to the center for another day of testing a week later wearing a knee brace. At that time she "reported that she did not feel capable of participating in further work simulation activities due to her level of discomfort." Id. at p. 27. The FCE report states that "[w]anting to drive safely home, [Plaintiff] wanted to avoid any computer data entry while sitting, or any paper and pencil or work sample testing, that might exacerbate her physical condition." Id. The FCE report confirms that Plaintiff made no attempt to complete the testing because of pain.

Plaintiff next points to several alleged factual errors in Dr. Kalen's report. More specifically, Plaintiff contends that Dr. Kalen's report inaccurately reported that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, whereas the FCE evaluation indicated

24

Plaintiff was able to lift and carry a maximum of 6 pounds. As discussed above, Dr. Kalen stated numerous legitimate reasons for disagreeing with the results of the FCE, which would explain why Dr. Kalen disregarded the 6 pound lifting limitation stated in the FCE.

Plaintiff also contends that Dr. Kalen incorrectly noted that spinal imaging showed no neural impingement, when in fact the MRIs did show neural impingement at multiple vertebrae. Plaintiff's argument is based on an incomplete reading of Dr. Kalen's report. Dr. Kalen reviewed several MRIs and made the following conclusions: the August 12, 2011 MRI showed no neural impingement, the August 13, 2011 MRI of the thoracic spine showed some scoliosis and degenerative changes, but no significant neural impingement; the August 13, 2011 cervical MRI showed neural impingement, but no pressure on any transiting nerve roots; the March 3, 2014 lumbar MRI showed multilevel degenerative changes, but no other remarkable lumbar findings; the July 23, 2016 lumbar MRI showed, among other things, encroachment on some exiting nerve roots at multiple levels, but no new findings of significance from prior scans; the July 25, 2016 thoracic spine MRI showed minimal changes from the prior scan; the August 10, 2016 cervical MRI showed, among other things, some encroachment of nerve roots as before. Thus, Dr. Kalen conducted a thorough review of Plaintiff's spinal imaging.

Plaintiff also asserts that Dr. Kalen's observation that Plaintiff was "neurologically intact" was irrelevant and wrong. Plaintiff's bald assertion, unaccompanied by any citation to evidentiary support in the administrative record, will not be considered.

Lastly, Plaintiff accuses Dr. Kalen of a dereliction of duty, asserting that Dr. Kalen "never even saw the final reports that were submitted under her name." Dkt. 91, p.7. The evidence is to the contrary. MCM's records and Dr. Kalen's deposition testimony show that MCMC sent Dr. Kalen the proposed final version of her report, and that Dr. Kalen reviewed and approved the final version. RAR06511-6513; Dkt. 92-2, pp. 27-29.

In sum, the Plan Administrator did not abuse her discretion by relying on Dr. Kalen's analysis of the FCE.

CASE NO.: 5:14-CV-02524-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

**E. Post Remand Consideration of SSDI Decision Awarding Plaintiff Benefits**

Plaintiff relies on the SSDI decision awarding her benefits to show that she is disabled. Specifically, Plaintiff cites to the Administrative Law Judge's findings that (1) Plaintiff's residual functional capacity was consistent with "sedentary work" but that her range of job duties would need to be limited to "simple, routine, repetitive tasks with only simple work related decision" and (2) Plaintiff's past relevant work exceeded Plaintiff's residual functional capacity because the past work required completion of complex cognitive tasks.

On remand, the Plan Administrator made several findings with respect to the SSDI decision. Specifically, the Plan Administrator found that: the SSDI award found Plaintiff was able to perform sedentary work, and the description of Plaintiff's physical abilities stated in the award was fully consistent with Plaintiff's job duties, the abilities described by the IME and other reviews; although the SSDI award found Plaintiff's past work exceeded her sedentary ability, the SSDI award did not identify what information it considered regarding Plaintiff's job duties; the greater body of evidence was consistent with the conclusion that Plaintiff's own occupation was sedentary and that the physical limitations referenced in the disability award did not prevent Plaintiff from performing her sedentary occupation; the SSDI conclusions regarding Plaintiff's cognitive abilities were not supported by the cited medical evidence; there was no evidence that Dr. Nguyen had conducted any formal assessment of Plaintiff's cognitive abilities, nor was there any objective evidence of cognitive impairment; the cognitive assessments by Dr. Spector took place in May and June of 2012, before Plaintiff's disability was denied and there was no evidence of any ongoing treatment; there was no description in the SSDI award of the basis for Dr. Mollah's determination that Plaintiff suffered from depression and anxiety, secondary to medical condition, and in any event, the AJD did not view that diagnosis as preventing Plaintiff from performing sedentary work; the medical evidence summarized at pages 4 and 5 of the award pre-dated the denial of Plaintiff's disability and therefore did not support the conclusion that Plaintiff was unable to perform the essential functions of her job after July 31, 2012; and the ALJ applied

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

certain Social Security regulations regarding "advanced age" that are not applicable to evaluating disability under the Plan. The Plan Administrator did not rely on the opinions of Drs. Kalen and Lobel regarding the SSDI award because she did not believe that the doctors adequately addressed the SSDI award's conclusion that Plaintiff was disabled. Dkt. 92-1, p. 3.

The Plan Administrator thoroughly compared and contrasted the definitions employed by the Social Security Administration and the Plan, as well as the medical evidence. See Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 636 (9th Cir. 2017) ("Ordinarily, a proper acknowledgment of a contrary SSA disability determination would entail comparing and contrasting not just the definitions employed but also the medical evidence upon which the decisionmakers relied."). The Plan Administrator did not abuse her discretion in evaluating the SSDI award.

**F. February 24, 2014 Report from Dr. Banks**

The Plan Administrator considered a February 24, 2014 report from Dr. Banks, which states that he examined and treated Plaintiff on multiple occasions. Based upon his review of medical records and the functional capacity examination he performed, Dr. Banks concluded that Plaintiff was unable to work on a full-time basis in any capacity because of her back and knee conditions. Dkt. 91-1, Ex. 13.

Dr. Bank's February 2014 report did not alter the Plan Administrator's conclusion that Plaintiff was not disabled under the Plan. The Plan Administrator reasoned that there was "no indication as to what Dr. Banks was told or provided regarding [Plaintiff's] sedentary occupation or job duties," and there were no medical records showing prior extensive examinations by Dr. Banks. RAR4584. The Plan Administrator also found that Dr. Banks' report did not reveal any conditions that would prevent Plaintiff from performing her job during the relevant time frame. The Plan Administrator's analysis of Dr. Banks' February 2014 report is neither illogical, implausible or without support in the inference that may be drawn from the facts of the record.

**G. 869 Pages of Medical Records Submitted in October of 2016**

CASE NO.: 5:14-CV-02524-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

During the remand process, Plaintiff submitted additional medical records, including new MRI studies of her knee and spine in 2014 and her spine in July 2016, and records of her visits with Dr. Banks on August 8, 2016 and August 23, 2016. Dkt. 91-1, Exs. 15-19. Plaintiff contends that these records show that she continues to suffer from objectively documented degenerative diseases that are known to cause significant pain and that she has consistently sought out treatment for this pain. In addition, on March 25, 2016, Plaintiff experienced an episode of hyponatremia, a condition that was likely caused by her pain state and the medications she uses to treat the pain. Dkt. 91-1, Ex. 20.

The Plan Administrator considered the additional 869 pages of medical records and concluded that these records did not provide any more information regarding Plaintiff's condition in 2012 that would support a finding that she was unable to perform the essential functions of her occupation at that time. This conclusion was reasonable and not an abuse of discretion. In addition to the records referenced by Plaintiff above, the 869 pages include, but are not limited to, an MRI taken on August 10, 2016; an appointment with Dr. Banks on February 24, 2014[3]; radiology results dated March 3 and 4, 2014; several visit summary notes from March of 2014, some of which reflect visits for medical issues unrelated to Plaintiff's back, shoulder, knee, or pain; visit summary notes dated May 8, 2014 and July 16, 2014 for back pain; a steroid injection on July 24, 2014; additional visit summary notes from October 2014; a report of joint pain in December of 2014; examinations on December 16, 2014 and January 6, 2015 by Dr. Haskell for left shoulder pain and right knee pain; Orthovisc injections to the right knee on January 12, 19, and 26, 2015; visit summary notes from April 2015 for conditions unrelated to Plaintiff's back, shoulder, knee or pain; another round of Orthovisc injections to the right knee on July 20 and 27, 2015, and August 3, 2015; a diagnosis of rotator cuff arthropathy in March of 2016; hyponatremia also in March of 2016; visit summary notes dated March 21, 2016 for osteoarthritis of the left

---

[3] The records indicate that Plaintiff did not seek treatment from Dr. Banks for approximately two years between 2014 and 2016. RAR4009.

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

shoulder; progress notes by Dr. Hsu dated March 25, 2016 regarding mental status and chest pain; notes by Dr. Cheng also dated March of 2016; notes by Dr. McCaffrey dated April 6, 2016 regarding an ear check prior to Plaintiff's annual trip to Mexico; physical therapy in May of 2016 for left shoulder pain; notes by Dr. Anderson dated June 19, 2016 with a diagnosis of dizziness; lab testing dated November 29, 2000; lab testing and a diagnosis by Dr. Brenneman of fatigue and malaise dated January 17, 2002; lab testing dated November 8, 2010; and lab testing in April of 2015, February, March and June of 2016. RAR3309-4179. These voluminous records, which are dated either well before or after Plaintiff's benefits were terminated in 2012, do not establish that Plaintiff was disabled under the Plan beyond July 31, 2012.

**H.  Plaintiff's Rebuttal Evidence From 2017**

Plaintiff relies on another two-day FCE conducted on March 7 and 8, 2017 to support her claim of disability. Dkt. 91-1, Ex. 32. Plaintiff also relies on an unsigned letter from Dr. Banks to Plaintiff's counsel dated March 24, 2017, in which he states that Plaintiff's spinal disease and other medical problems impair her ability to work in any capacity on a full time basis. Dkt. 91-1, Ex. 33. Plaintiff requests that the Court consider this evidence as rebuttal evidence to cure the fact that she did not receive an opportunity to respond to the Plan Administrator's rationales for denying her claim. Dkt. 93, p. 9.

The Court finds that the 2017 FCE and Dr. Banks' 2017 letter do not provide any new information regarding Plaintiff's condition in 2012.

//

//

//

//

//

//

CASE NO.: 5:14-CV-02524-EJD
ORDERGRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

# IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for judgment on the administrative record or, in the alternative, an order setting the case for trial <u>de novo</u>, is DENIED.

**IT IS SO ORDERED.**

Dated: February 12. 2018

_____
EDWARD J. DAVILA
United States District Judge